UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

G&N INVESTMENTS, LLC,                                                                                           PLAINTIFF

v.                                                                                  CIVIL ACTION NO. 3:08-CV-504-S

O'REILLY AUTOMOTIVE, INC.,                                                                           DEFENDANT

## MEMORANDUM OPINION

This case turns on the construction of a single contract term. Nobody disputes the facts; each party believes itself entitled to judgment as a matter of law. Plaintiff G&N Investments owns a commercial building in Oshkosh, Wisconsin. In May 2008, defendant O'Reilly Automotive entered into an agreement to lease the building, with the intention of operating an auto parts store on the premises. The lease was to commence "on the first day of the first month after Tenant receives its Certificate of Occupancy from the City of Oshkosh." (Def.'s Ex. 1, Lease Agreement, at 1.) The crucial section of the contract (which falls under the heading "Alterations, Additions, and Improvements") provides:

> Prior to the commencement date of the Lease, Tenant and/or Tenant's agents shall have the right to enter upon the premises for the purpose of investigative work necessary for Tenant to determine the feasibility of the premises for Tenant's intended use. Tenant's right to enter the property shall include the right to renovate and occupy the premises, subject to the Tenant providing all insurance required by Section 12 of this Lease. *If* prior to obtaining a building permit, *Tenant* determines it is unable to obtain a building permit, *determines that the premises will not work for Tenant's intended use*, determines that the zoning of the property does not allow the intended use, or determines there to be encumbrances, liens, or easements that would prohibit Tenant's ability to develop the property, *then Tenant, in Tenant's sole discretion, may elect to terminate this agreement.* In the event this agreement is terminated by the Tenant, both parties will be released from any obligation to the other and this agreement shall become null and void.

(*Id.* at 4 (emphasis added).) On June 30, 2008, within two months of signing the agreement, O'Reilly sent G&N a letter purporting to terminate the agreement on the ground that O'Reilly had "determined that this site will not work for Tenant's intended use." (Def.'s Ex. 2, Termination Letter.) At the time, O'Reilly provided no explanation for its change of heart; it has since emerged that in the interim period O'Reilly acquired another auto parts chain, which brought with it a store in Oshkosh with a better location than the G&N property. G&N sued for breach of contract, O'Reilly defended by invoking the above-quoted contract language, and both parties have now moved for summary judgment.

The only question is whether O'Reilly was within its rights to terminate the agreement as it did. Per the terms of the agreement, Wisconsin law governs the construction of the agreement and the parties' rights and obligations under it. In Wisconsin, as everywhere, interpretation of a contract begins with what it says. "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 623 (Wis. 1998). Pulling together the relevant parts of the paragraph above, we get a sentence that reads: "If Tenant determines that the premises will not work for Tenant's intended use, then Tenant, in Tenant's sole discretion, may elect to terminate this agreement." This condensed provision grants O'Reilly a conditional power of termination, which it may exercise if it determines that the property "will not work" for its intended use. So we must ask whether O'Reilly determined, within the meaning of the contract, that the building would not meet its needs.

It's clear enough that O'Reilly determined that it no longer wanted to rent the property, but that does not necessarily mean that it determined the property would not work—that it would not serve the purpose for which it was rented. Although O'Reilly does not articulate any view of what

its "intended use" is, the surrounding context makes plain that its intent was to operate an auto parts store. Having not articulated what its purpose was, O'Reilly also does not explain why the building would not adequately serve it. Later developments,[1] however, suggest that it would be all but impossible for O'Reilly to argue that it could not have operated its business out of G&N's property.

How then could O'Reilly have determined that the building would not serve its purpose? There are two possible answers to that question. The first would be to argue for a narrow construction of O'Reilly's purpose as a tenant—to claim, for example, that its purpose was only to operate a single store in Oshkosh, and that renting one space when it already owned another would not work for that purpose. This argument seems implausible, and anyway O'Reilly does not make it. It instead relies on the second possible route out of the conditional clause, which is to argue that the contract allowed it unfettered authority to determine, for any reason or for no reason at all, that the building would not serve its purposes. To support this view, O'Reilly argues that the contract grants it, as tenant, the "sole discretion" to decide the question. As a matter of interpretation, however, this can't be right. The phrase "sole discretion" comes only after the "then" in the sentence; it falls outside the conditional, and is relevant only once the "if" clause is fulfilled.

O'Reilly can fall back on the naked terms of the agreement: only the tenant is given authority to make the crucial determination, and the contract does not contain any express limitations on that authority. Yet the contract must still be interpreted in light of the background duty of good faith and fair dealing. *See Chi. Title Ins. Co. v. Runkel Abstract & Title Co.*, 610 F. Supp. 2d 973, 977 (W.D. Wis. 2009) ("In Wisconsin, every contract carries with it a duty of good faith and fair dealing." (*citing Kreckel v. Walbridge Aldinger Co.*, 721 N.W.2d 508, 514 (Wis. Ct. App. 2006))). The

---

[1] G&N has subsequently reached a lease agreement with another auto parts store.

commentary to the Restatement (Second) of Contracts[2] provides some guidance as to the meaning of this duty:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. . . . A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: *evasion of the spirit of the bargain*, lack of diligence and slacking off, willful rendering of imperfect performance, *abuse of a power to specify terms*, and interference with or failure to cooperate in the other party's performance.

Restatement (Second) of Contracts § 205 cmt. d (emphasis added). In ascertaining what the duty of good faith requires, it is important to discern the contract's spirit or purpose. "The general rule of interpretation of a contract is to determine the intent from the instrument as a whole and not necessarily from isolated or particular parts thereof." *Carey v. Rathman*, 200 N.W.2d 591, 594 (Wis. 1972) (*citing Langer v. Stegerwald Lumber Co.*, 47 N.W.2d 734 (Wis. 1951)). We look, then, to the contract as a whole, with particular attention to the immediate surroundings of the provision in question.

First we observe that this was a long-term (twenty-year) commercial lease that was designed to ensure that the property met and continued to meet the tenant's requirements as a commercial enterprise. Next, note again the heading under which the troublesome paragraph falls: "Alterations, Additions and Improvements." That would be, one might think, an odd place to put a clause allowing unilateral cancellation of a contract without cause. More importantly, the rest of the provisions in that section fit with the purpose set out in the heading. The first paragraph permits the tenant to make modifications and improvements to the premises, with the stated purpose of doing

---

[2] This comment has been explicitly adopted by the Wisconsin courts. *See*, *e.g.*, *State v. Peppertree Resort Villas*, 651 N.W.2d 345, 353 (Wis. Ct. App. 2002); *Foseid v. State Bank*, 541 N.W.2d 203, 213 (Wis. Ct. App. 1995).

what's necessary to "create an O'Reilly Auto Parts store." (Def.'s Ex. 1, Lease Agreement, at 3.) The right to install equipment was to continue throughout the term of the lease, and the contract granted the tenant the right to remove any such equipment upon termination. The next paragraph indicates that "Tenant shall build out space to Tenant's needs," with G&N agreeing to reimburse part of the cost. (*Id.* at 4.) Paragraph three dictates that the tenant is responsible for all costs associated with any alterations or improvements. Paragraph four is the one quoted above. Read as a whole, its primary purpose is to allow G&N to enter and inspect the premises prior to occupancy in order to ensure that the space will meet its needs, and to plan for and begin renovations and improvements. Although it did grant the defendant power to terminate the lease if it "determine[d] that the premises will not work for Tenant's intended use," that provision must be read in light of its surroundings. O'Reilly was also given termination power if it "determine[d] it is unable to obtain a building permit," "determine[d] that the zoning of the property does not allow the intended use," or "determine[d] there to be encumbrances, liens, or easements that would prohibit Tenant's ability to develop the property." (*Id.*) The overall purpose or spirit of the portion of the contract from which O'Reilly purports to derive unfettered unilateral authority to cancel the lease is, rather plainly, to allow it to ensure that the building's physical structure and legal status would permit its use as an O'Reilly Auto Parts store.

That conclusion does not, on its own, override the apparently clear statement that it was up to O'Reilly to determine whether the premises will work for their intended purpose. It does, however, affect how the court understands the duty of good faith. Cancelling the contract because the company had acquired a new, preferable location in the interim does not fit within a normal understanding of the agreement. To allow O'Reilly to do so would be to allow it to "eva[de] the

-5-

spirit of the bargain." Similarly, to allow it to adopt a narrow construction of "intended purpose" after the fact would be to permit an "abuse of the power to specify terms." And in the larger scheme of things, we can be quite sure that G&N did not suspect that a provision allowing the tenant to ensure that the necessary renovations were physically and legally feasible would grant its counterparty a costless way out of the deal just because another opportunity had come along.

O'Reilly had a contractual duty not to invoke the termination clause unless it actually determined, in good faith, that the site would not work for the purpose intended by the parties, viz., operation of an auto parts store. It did not make and, so far as the court can tell, could not have made any such determination. It was not required to meet any evidentiary standard or to act within the bounds of commercial reasonableness; it was required to act in good faith. It failed to do so. Consequently it stands in breach of contract, and the court will, by separate order, grant summary judgment in favor of G&N.

                                               **Charles R. Simpson III, Judge**
                                               **United States District Court**